IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-CA-01082-SCT

*HARRISON COUNTY SCHOOL DISTRICT*

*v.*

*LONG BEACH SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/95 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALBERT L. NECAISE |
| ATTORNEY FOR APPELLEE: | JAMES C. SIMPSON, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 7/17/97 |
| MOTION FOR REHEARING FILED: | 8/15/97 |
| MANDATE ISSUED: | 10/9/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. In May of 1992, the Mississippi State Legislature passed three House Bills which were signed into law by the Governor. Each House Bill authorized a specific municipality on the Mississippi Gulf Coast to impose a 3.2 percent tax on the gross revenue of gaming vessels docked within the geographic confines of each municipality.

¶2. Each House Bill directed the individual municipalities to use the funds collected for specific purposes:

> House Bill No. 1504: (authorizing the City of Biloxi to impose fees) "Such monies shall be expended by the municipality as follows: Twenty percent (20%) shall be expended for public safety; twenty percent (20%) shall be expended for educational purposes; ten percent (10%) shall be distributed to Harrison County and shall be expended by the County for public safety purposes; and **ten percent (10%) shall be expended for educational purposes in Harrison County**."

(Emphasis added.)

> House Bill No. 1505: (authorizing the City of D'Iberville to impose fees) "Such monies shall be expended by the municipality as follows: Thirty percent (30%) shall be expended for police protection, fire protection, recreation or public works infrastructure within the municipality; twenty percent (20%) shall be expended for educational purposes within the municipality; ten percent (10%) shall be distributed to Harrison County and shall be expended by the County for public safety purposes; and **twenty percent (20%) shall be expended for educational purposes in Harrison County**."

(Emphasis added.)

> House Bill No. 1520: (authorizing the city of Gulfport to impose fees) "Such monies shall be expended by the municipality as follows: Twenty percent (20%) shall be expended for public safety; twenty percent (20%) shall be expended for educational purposes; ten percent (10%) shall be distributed to Harrison County and shall be expended by the County for public safety purposes; and **ten percent (10%) shall be expended for educational purposes in Harrison County**."

(Emphasis added.)

¶3. The municipalities of Gulfport and Biloxi adopted ordinances to implement the authority granted by the Legislature. At the time of the appeal, no ordinance had been adopted by the City of D'Iberville because no gaming establishment existed within the D'Iberville municipal limits. Each ordinance conformed to the language of the respective House Bill requiring that a percentage of the revenue be expended for "educational purposes in Harrison County."

¶4. Following the adoption of the ordinances in Biloxi and Gulfport, the State Tax Commission required the cities to distribute the funds collected to the Harrison County School District (hereinafter "HCSD") rather than to Harrison County as a whole. Both cities agreed with this determination. Unhappy with this development, the Long Beach School District (hereinafter "Long Beach") contacted the HCSD. After a disagreement about the interpretation of the ordinance, Long Beach sought an opinion from the Attorney General in 1993. The opinion from the Office of the Attorney General rejected the assertion from Long Beach that "educational purposes in Harrison County" included all the school districts in Harrison County. Rather, the opinion stated that the distribution of funds was limited to the HCSD. The opinion emphasized the separation of educational expenditures between the municipalities and Harrison County. The opinion reasoned that the funds could only be distributed to the HCSD because the school district encompassed all of the schools in the County that are not part of a municipality. Under this approach, neither the Long Beach School District nor the Pass Christian School District would receive any funding from the casino tax even though both are in Harrison County.

¶5. Unconvinced by the official opinion issued by the Office of the Attorney General, Long Beach filed a Complaint for Declaratory Relief in the Circuit Court of Harrison County, Mississippi. The action named the HCSD, the City of Biloxi and the City of Gulfport as defendants in the Complaint for Declaratory Relief. The City of Gulfport chose not to respond. The City of Biloxi filed an answer which stated that the City had committed no wrongdoing, that the interpretation by the City was reasonable and in good faith, that the position supported by the HCSD was proper, and that the City would abide by the Court's decision. HCSD defended the action.

¶6. The HCSD answered the Complaint and asserted that the Attorney General of the State of Mississippi correctly interpreted the statute. The school district contends that under the plain language of the statute only the schools in the HCSD are entitled to the gaming tax revenue generated by the statute. Long Beach contends that the position of the HCSD excludes not only the children of Harrison County living in Long Beach and Pass Christian, but it also excludes the children who live outside the municipalities but attend school in Long Beach or Pass Christian. Long Beach also claims that by limiting distribution of the proceeds to the HCSD, senior citizens' groups, public libraries and adult education programs in Harrison County do not receive the benefits to which they are entitled.

¶7. Cross motions for Summary Judgment were filed and argued before the Honorable Kosta N. Vlahos, Senior Circuit Court Judge. On June 16, 1995, Judge Vlahos entered an order which granted Long Beach's Motion for Summary Judgment. Judge Vlahos found that the clear and unambiguous language of the statute required that the funds generated from the casino tax be distributed throughout the entirety of Harrison County for educational purposes.

¶8. HCSD filed a Motion to Reconsider and a Motion for Stay of Execution of Judgment. Judge Vlahos denied the Motion to Reconsider on September 28, 1995, after hearing oral arguments. The two parties and the trial court agreed that revenues generated by the casino tax should be held in trust by the HCSD until final resolution of the appeal by the Mississippi Supreme Court. The HCSD properly filed and perfected this appeal asking the Court to interpret the statutory provisions in question.

## STATEMENT OF THE ISSUE

**DID THE MISSISSIPPI STATE LEGISLATURE INTEND FOR THE PHRASE "FOR EDUCATIONAL PURPOSES IN HARRISON COUNTY," AS STATED IN HOUSE BILLS 1504, 1505, AND 1520, TO INCLUDE ALL OF THE SCHOOLS IN HARRISON COUNTY, AS DETERMINED BY THE TRIAL COURT, OR TO INCLUDE ONLY THE SCHOOLS IN THE HARRISON COUNTY SCHOOL DISTRICT, AS SUGGESTED BY THE APPELLANT AND THE OFFICE OF THE ATTORNEY GENERAL?**

## ANALYSIS

¶9. The only issue before the Court is the interpretation of House Bills No. 1504, No. 1505, and No. 1520. The question posed to the Court for interpretation is whether "Harrison County," as stated in the House Bills, means Harrison County, as a whole, or the Harrison County School District.

¶10. Judge Vlahos properly stated the applicable legal guidelines in his opinion:

It is well settled that when a court considers a statute passed by the Legislature, the first question before the court is whether the statute is ambiguous. ***Mississippi Power Co. v. Jones,*** 369 So. 2d 1381, 1388 (Miss. 1979). If the statute is not ambiguous, the court should interpret and apply the statute according to its plain meaning without the aid of principles of statutory construction. *Id.* Whether the statute is ambiguous or not, the ultimate goal of this Court in

interpreting a statute is to discern and give effect to legislative intent. ***Anderson v. Lambert,*** 494 So. 2d 370, 372 (Miss. 1986).

¶11. Judge Vlahos found that the statutes in question were not ambiguous and that the plain meaning of the statutes allowed for the funds collected from the casino tax to be distributed to all of the schoolchildren of Harrison County. Under this ruling, the funds would be shared by all five school districts in Harrison County: the Harrison County School District, the Biloxi Municipal School District, the Gulfport Municipal School District, the Long Beach Municipal School District and the Pass Christian School District. Judge Vlahos held that if the Legislature had intended for the funds to benefit only the HCSD, it should have been specified in the statute.

¶12. To illuminate the intent of the Legislature, Judge Vlahos and Long Beach place great emphasis on House Bill No. 1376, which died in House Committee:

> House Bill No. 1376: (authorizing the City of Gulfport to impose fees) "Such monies shall be expended by the municipality as follows: Twenty percent (20%) shall be expended for public safety; twenty percent (20%) shall be distributed to school districts within the municipality; ten percent (10%) shall be distributed to Harrison County and shall be expended by the county for public safety purposes; **and ten percent (10%) shall be distributed to the county school district in Harrison County.**"

(Emphasis added.)

¶13. House Bill No. 1376 contains virtually identical language to House Bill No. 1520. The only significant difference is that the rejected bill distributes the funds to the HCSD rather than "for educational purposes in Harrison County." Judge Vlahos considered this change to be determinative of the Legislature's intent. "In the absence of a clear statement from the Legislature that the money goes to Harrison County *School District*, this Court cannot read into the statute what is not there." (Emphasis added.)

¶14. The HCSD disagrees. Both House Bill No. 1504 and House Bill No. 1520 provide for two expenditures for education purposes. Both bills allow for 20% of the funds collected to be used within the respective cities and 10% to be distributed to Harrison County for education purposes. Bill No. 1505 is worded differently. This bill allows the City of D'Iberville to use 20% of the funds collected for educational purposes "within the municipality" and 20% for educational purposes in Harrison County.

¶15. The HCSD argues that this subtle difference in wording exemplifies the intention of the Legislature to make a distinction between municipal education and county education. By providing for two separate expenditures for education under each bill, HCSD contends that the Legislature intended for one part of the funds collected to go solely to the municipalities, while the county would receive a separate percentage.

¶16. The trial court believed that the HCSD's argument was flawed. Judge Vlahos astutely attributed the difference in wording to the fact that D'Iberville does not have a separate municipal school district. The schools within the D'Iberville municipal limits are operated by the HCSD. Therefore, the trial court equated the wording of all three statutes. Since D'Iberville does not operate its own

schools, the statute's reference to education purposes within the municipality parallels the statutes involving Biloxi and Gulfport. The schools within the municipality of D'Iberville would receive a greater percentage of the funds collected than the county schools if a casino was built in D'Iberville. Simply stated, this would allow for the schools operated by the HCSD within the municipal limits of D'Iberville to receive a greater percentage than the other schools operated by the HCSD.

¶17. HCSD asserts that the interpretation presented by Long Beach and accepted by the trial court clearly goes against the intention of the Legislature. Under the trial court's ruling, the cities of Gulfport and Biloxi keep 20% of the funds collected and give 10% to Harrison County. The County, in turn, allocates a percentage of the 10% received to each school district in the county, including Gulfport and Biloxi. HCSD argues that if this was the intent of the Legislature, the entire amount of the funds collected should be given to Harrison County for allocation so Gulfport and Biloxi would not receive two amounts.

¶18. Judge Vlahos rejected this assertion by HCSD. The trial court reasoned that under the present system only the HCSD benefitted from all of the statutes. The trial court held that the intent of the Legislature was to benefit any municipality that contained a casino over and above the rest of the county. The municipalities with legalized gambling incur increased costs due to an influx of schoolchildren. The same could be said for the county but to a lesser extent. The greatest benefit should be handed to those who incur the greatest responsibility. That is the case with the municipalities here. The Legislature realized that an increase in crime, traffic, population and education costs could follow legalized gambling to the Gulf Coast. Therefore, the Legislature passed the statutes allowing for the municipalities to tax the casinos to overcome the increase in cost. Judge Vlahos wisely supported his ruling with the following statement:

> In support of this legal ruling, the Court observes that all voters in Harrison County participated in the referendum on gaming. The proponents of legalized gaming campaigned that all the schoolchildren of Harrison County would benefit from its passage. Therefore, it follows that all schoolchildren residing in Harrison County should benefit from the passage of the gaming laws by being able to reap the benefits of tax statutes imposed on the gaming entities.

¶19. The final argument presented by the HCSD is that the Mississippi Legislature has never passed a bill benefitting municipalities that do not serve as docks for gambling vessels. HCSD also argues that the trial court erred by straying from the intent of the Legislature, as evidenced by the statutes, and improvising on behalf of the Legislature. *Brady v. John Hancock Mutual Life Insurance Co.,* 342 So. 2d 295 (Miss. 1977), *appeal dismissed,* 434 U.S. 804 (1977).

¶20. Long Beach points to new roads and highways, new university buildings and many other improvements across the state as evidence of the benefits of legalized gambling. Long Beach contends that the argument of the HCSD is completely false because of the statewide benefits. At the same time, Long Beach contends that all of the municipalities of Harrison County share the burdens of legalized gambling and, therefore, should share the benefits. Although there are no casinos located in Long Beach or Pass Christian, there is no doubt that both municipalities have been greatly affected by the introduction of legalized gambling to the Mississippi Gulf Coast. Certainly, the effect is greater in the cities of Biloxi and Gulfport, and consequently the benefit under the new statutes is also greater.

¶21. There is no question that the trial court acted properly in interpreting the plain meaning of the statutes. The Appellant makes no argument requiring a reversal of the trial court's intelligent and well-supported decision. Therefore, the decision of the trial court is affirmed with regard to the sole issue of this case.

## CONCLUSION

¶22. The analysis presented by Judge Vlahos contains many valuable insights into the interpretation of the statutes in question. Public policy and fairness play a large part in the trial court's decision. At the same time, Judge Vlahos follows the controlling case law to the letter. It is clear that the decision of the trial court is proper under the plain meaning of the statutes. The position of the HCSD, although a possible intention of the Legislature, is not the plain meaning of the statute. The language of the statutes is the center of our focus, and the statutes clearly state "for educational purposes in Harrison County." The statutes do not mention the county school district. The language chosen by the Legislature is clear and unambiguous. Therefore, the plain meaning is given deference, and all of the schoolchildren of Harrison County will benefit from the casino tax.

¶23. **AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**