BRIDGES, P.J.,
for the Court.
¶ 1. Attempting to obtain child support funds, the Mississippi Department of Human Services (MDHS) successfully garnished Marion Blount’s wages and transferred the proceeds to Katye Blount. Marion filed a motion for modification, ter-inination of wage order, and return of money wrongfully withheld. By way of his motion, Marion alleged that MDHS wrongfully garnished his wages for child support because he had legal and physical custody of his children. The chancellor ordered MDHS to return the funds to Marion. Aggrieved, MDHS appeals and requests this Court’s resolution of the following issues, listed verbatim:
I. WHETHER THE STATE OF MISSISSIPPI HAS WAIVED SOVEREIGN IMMUNITY AND THEREFORE THE CHANCERY COURT LACKED SUBJECT MATTER JURISDICTION TO ENTERTAIN MONEY DAMAGES AGAINST THE STATE OR IN THE ALTERNATIVE THAT THE STATE IS IMMUNE FROM LIABILITY IF DAMAGES ARE ASSESSED.
II. WHETHER THE CHANCERY COURT LACKED SUBJECT MATTER JURISDICTION BECAUSE THE DEFENDANT FAILED TO NOTIFY THE MDHS OF THE TORT CLAIM TO RECOVER MONIES “WRONGFULLY COLLECTED” WHICH PASSED ' THROUGH THE MDHS TO THE CUSTODIAL PARENT PRIOR TO FILING HIS ACTION IN CHANCERY IN VIOLATION OF : MISS. CODE ANN. § 11-46-11(1) (1972, AS AMENDED).
*328 III. WHETHER THE CHANCERY COURT ERRED WHEN IT FAILED TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW WHEN IT FOUND THE MDHS LIABLE FOR SUPPORT COLLECTED FROM THE DEFENDANT AND DISBURSED TO THE CUSTODIAL PARENT UNDER A PRESUMPTIVELY VALID JUDGMENT WITHOUT STATING A LEGAL THEORY WHICH WOULD SUPPORT SUCH A RULING OR IN THE ALTERNATIVE THAT . THE RULING WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
IV. WHETHER THE CHANCERY COURT ERRED BY FAILING TO FIND THAT THE DEFENDANT “SLEPT ON HIS RIGHTS” BY ORDERING MDHS TO REPAY CHILD SUPPORT COLLECTED FROM THE DEFENDANT AND DISBURSED TO THE CUSTODIAL PARENT UNDER A VALID JUDGMENT WHEN THE DEFENDANT FAILED TO BRING THE ISSUE BEFORE THE .COURT FOR ELEVEN YEARS.
V. WHETHER THE CHANCERY COURT ERRED BY ORDERING MDHS, WHICH WAS NOT UNJUSTLY ENRICHED, TO PAY WHAT AMOUNTS TO MONEY DAMAGES FOR CHILD SUPPORT ‘WRONGFULLY COLLECTED” PURSUANT TO A VALID JUDGMENT AND DISBURSED BY THE CUSTODIAL PARENT.
Our review of the record mandates reversal based on the fact that MDHS collected Marion’s wages pursuant to a valid court order. As much as this Court admires Marion’s diligence in caring for his children, we must render judgment for MDHS. Because we reverse and render, we will omit discussion of issues I-IV and confine our discussion to Issue V.
PROCEDURAL HISTORY
¶ 2. Marion and Katye Blount divorced in 1986. The Hinds County Chancery Court granted Katye exclusive care, custody, and control of their three minor children Marion, Cody, and Audrina Blount. The chancellor ordered Marion to make monthly child support payments of $200.
¶ 3. In June of 1988, Katye filed a motion for contempt and alleged that Marion failed to make child support payments. In August of 1988, the Hinds County Chancery Court entered an order and granted Katye’s motion for contempt. The chancellor found a $4,600 child support arrear-age and entered an order for withholding.
¶ 4. In April of 1993, the Mississippi Department of Human Services filed a motion for contempt against Marion and sought $16,000 in child support arrearage. In June of 1993, MDHS’s motion for contempt was dismissed with prejudice. Between April of 1993 and March of 1999, the MDHS records indicate that they received no child support payments from Marion.
¶ 5. In April of 1999, MDHS began receiving monthly support payments from Marion’s employer, Calvert Company. The support payments were acquired based on a wage withholding order that MDHS submitted to Calvert. Those payments spanned from April of 1999 until October of 2002. MDHS sent those payments to Katye. In March of 2002, Am-south Bank sent MDHS money from Marion’s bank account according to an encumbrance initiated by MDHS.
¶ 6. On May 24, 2002, Marion filed a motion titled “Motion for Modification, *329 Termination of the Wage Order, and 'Return of Money Wrongfully Withheld” against MDHS, AmSouth and Calvert, On September 4, 2002, Calvert responded to Marion’s motion. Marion agreed to dismiss Calvert. AmSouth responded on October 21, 2002., MDHS never responded with an answer.
¶ 7. MDHS did, however, attend a hearing on Marion’s motion, which took place on October 31, 2002. Based on that hearing, Marion received a judgment of modification. That judgment modified prior judgments to terminate custody and child support. Audrina Blount was emancipated. The chancellor ordered MDHS to pay Marion $14,030.48. That figure represented support payments that MDHS collected from April of 1999 to October of 2002.
¶ 8. On November 14, 2002, MDHS filed a motion to amend the judgment. Within its motion to amend the judgment, MDHS asked the chancellor to amend the judgment and relieve MDHS of any and all obligations to reimburse Marion for child support collected by MDHS and disbursed to Katye.
¶ 9. On June 20, 2003, the parties conducted a final hearing on MDHS’s-motion to amend the judgment. Katye had passed away. The chancellor adjusted the award to $13,569.52, but denied to reverse the decision for Marion. MDHS filed their notice of appeal on August 13, 2003.
STANDARD OF REVIEW
¶ 10. The matter before this Court follows a decision in the chancery court. We will not disturb a chancellor’s findings of fact unless those findings are manifestly wrong, clearly erroneous, or unsupported by substantial credible evidence. Brown v. Miss. Dept. of Human Services, 806 So.2d 1004(¶ 4) (Miss.2000) (citations omitted). Should an issue present a question of law, then this Court will review that issue under the de novo standard. Id.
ANALYSIS
¶ 11. For the sake of brevity, this Court omits discussion of MDHS’s assertions in issues I-IV.
V. WHETHER THE CHANCERY COURT ERRED BY ORDERING MDHS, WHICH WAS NOT UNJUSTLY ENRICHED, TO PAY WHAT AMOUNTS TO MONEY DAMAGES FOR CHILD SUPPORT ‘WRONGFULLY COLLECTED” PURSUANT TO A VALID JUDGMENT AND DISBURSED TO THE CUSTODIAL PARENT.
¶ 12. The legislature specifically empowered MDHS, through its Child Support Unit, to “secure and collect support by any method authorized under state law ... from a parent or any other person legally liable for such support who has either failed or refused to provide support, deserted, neglected or abandoned the child or children.” Miss.Code Ann. § 43-19-31(b) (Rev.2000) (emphasis added). Here, this Court cannot say that Marion failed or refused to provide support for his three children. When the Hinds County Youth Court removed Mario, Cody, and Audrina from Katye’s custody, it was Marion that provided support when his children sought refuge from their mother’s drug dependency. Nor did Marion desert, neglect, or abandon his children. Rather, Marion took his children into his home and provided for their needs.
¶ 13. However, we are called to resolve whether the actions of the Youth Court absolve Marion’s child support obligations. The Mississippi Constitution dictates that the chancery court has full jurisdiction over matters pertaining to divorce and alimony. Miss. Const. Art. 6, *330 § 159(b). Additionally, under Mississippi law, chancery courts have continuous and exclusive jurisdiction over custody proceedings. Helmert v. Biffany, 842 So.2d 1287(¶ 20) (Miss.2003).
¶ 14. Youth Courts, however, “have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child, or a dependent child.” Miss.Code Ann. § 43-21-151 (Rev.2000); Helmert, 842 So.2d at (¶ 17). Nowhere does the Youth Court Act provide for it taking jurisdiction over a case involving exclusively child support, contempt, and modification issues. See, e.g., Id. Accordingly, the Youth Court had no authority to terminate Marion’s child support obligations. Because no copy of the Youth Court Order at issue is within the record, there is no allegation that the Youth Court even attempted to modify Marion's child support obligations.
¶ 15. Additionally, Marión never petitioned the chancery court for a modification of custody or his child support obligations. Without modification, the' support obligation continued as ordered by the original child support obligation from 1986. “Once a child support payment becomes due, that payment vests in the child.” Burt v. Burt, 841 So.2d 108(1112) (Miss.2001). “Once the payments are vested, ‘they cannot be modified or forgiven by the courts.’ ” Id (citations omitted). “Each payment that becomes due and remains unpaid ‘becomes a ‘judgment’ against the supporting parent.’ ” Id. “The only defense thereto is payment.” Id. Consequently, when MDHS collected Marion’s wages, MDHS actually proceeded according to a valid court order. Additionally, MDHS had no notice that Mario, Cody, and Audrina left Katye’s home and moved in with Marion. MDHS cannot be liable for acting pursuant to an unmodified and otherwise valid court order. Accordingly, this Court reverses the chancellor’s decision and renders judgment for MDHS.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND JUDGMENT IS RENDERED FOR DEPARTMENT OF HUMAN SERVICES, STATE OF MISSISSIPPI. ALL' COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.